UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROCKIES EXPRESS PIPELINE LLC, )<br>    *Plaintiff*, )<br>)<br>*vs.* )<br>)<br>INDIANA STATE NATURAL RESOURCES )<br>COMMISSION, *et al.*, )<br>    *Defendants.* ) | 1:08-cv-1651-RLY-JMS |

## ORDER

Presently before the Court is Intervenor-Defendant Elrod Water Company d/b/a Hoosier Hills Regional Water District's ("Hoosier Hills") Motion to Compel Discovery filed. [Dkt. 72.]

### BACKGROUND

In this case Plaintiff Rockies Express Pipeline LLC's ("REX") seeks a declaratory judgment and a permanent injunction to prevent the Indiana State Natural Resources Commission (the "NRC") from continuing any further efforts to review the propriety of an interstate natural gas pipeline. In connection with REX's motion for preliminary injunction, the Chief Judge made several findings of fact pertinent to the present discovery dispute:

1. REX is constructing an underground natural gas pipeline, commonly known as "REX EAST," that will extend from Audrain County, Missouri to Monroe County, Ohio.

2. REX applied for and received from the Federal Energy Regulatory Commission ("FERC") a Certificate of Public Convenience and Necessity for REX EAST (the "FERC Certificate") pursuant to Section 7 of the Natural Gas Act, 15 U.S.C. § 717f….

4. FERC also determined the appropriate route for REX EAST in the FERC Certificate and concluded that construction and operation of REX EAST along its approved route would have limited adverse environmental impacts. FERC, however, conditioned the FERC Certificate on REX undertaking special mitigation efforts identified in Appendix E to the FERC Certificate to further reduce the environmental impact of REX EAST….

6. Intervenor Hoosier Hills was a party to the FERC proceedings and opposed issuance of the FERC Certificate to the extent the FERC-approved route placed REX EAST in its wellhead protection area located in the vicinity of the Whitewater River in Franklin County, Indiana.

7. The FERC Certificate required certain special mitigation measures be taken in connection with construction in the area of the Whitewater River, including without limitation consulting with Intervenor Hoosier Hills regarding a required water monitoring plan.

8. FERC re-addressed the environmental impact of REX EAST on the Whitewater River and its aquifer at Hoosier Hills' request and, on November 10, 2008, re-affirmed its previous findings that the special mitigation requirements it had imposed in the FERC Certificate were adequate, but increased the duration of some of those efforts in order to reflect changed circumstances.

9. The FERC Certificate required REX to have cooperated with state and local authorities as part of the process of securing the FERC Certificate. Consistent with that requirement, REX had obtained from DNR a Certificate of Approval determining that construction of REX EAST in the vicinity of the Whitewater River (the "Whitewater Construction") conformed to the requirements of Indiana Code § 14-28-1-1 *et seq.* and imposing certain conditions on the Whitewater Construction. DNR issued its Certificate of Approval on January 23, 2008, and subsequently amended it by a letter dated April 21, 2008 (together, the "DNR Certificate"). REX did not object to the conditions of the DNR Certificate of Approval.

10. Intervenor Hoosier Hills…requested Defendant NRC to conduct the Administrative Action and "reverse" DNR's approval of the Whitewater Construction. Defendant NRC granted the requests for it to conduct the Administrative Action….

14. By a letter dated February 24, 2009, FERC released REX to commence the Whitewater Construction and increased the special mitigation efforts that FERC previously required REX to undertake in the FERC Certificate.

[Dkt. 45 (citations omitted).]

The Chief Judge also made the following relevant conclusions of law:

2. REX is highly likely to succeed on the merits in demonstrating that Federal law preempts Defendant NRC's state law authority to proceed with the Administrative Action.

3. It will be impossible for REX to comply with both the FERC Certificate and the requirements of Indiana Code § 14-28-1-1 *et seq.*, under which the DNR Certificate was obtained, if Defendant NRC grants the only relief requested of it and invalidates the FERC Certificate. Moreover, even if the Administrative Action does not directly conflict with the FERC Certificate,

- 2 -

> Defendant NRC will necessarily have to act as part of the Administrative Action within a field of regulation over which FERC has exclusive jurisdiction under the Natural Gas Act, 15 U.S.C. § 717 *et seq.* It appears, therefore, that the Administrative Action is subject to preemption under both its "conflict" and "field" branches.

[*Id.* at 6]. Based upon those findings, and others, the Chief Judge issued a preliminary injunction against further proceedings in the Administrative Action.

Anticipating that REX would move for summary judgment on preemption, Hoosier Hills filed the Motion to Compel discovery to obtain evidence that it says is relevant to that issue.

## DISCUSSION

Although the Federal Rules of Civil Procedure contain liberal discovery provisions, they also provide the Court with a great deal of discretion to use in controlling the extent and timing of discovery. *See generally Gile v. United Airlines*, 95 F.3d 492, 496 (7th Cir. 1996). Consistent with the Federal Rules' promise of a "just, speedy, and inexpensive determination of every action," Fed. R. Civ. Pro. 1, the Court "must limit the…extent of discovery…if it determines that…the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues," Fed. R. Civ. Pro. 26(b)(2)(C)(iii).

Few areas of fact constitute proper subjects of discovery in cases, such as this one, where conflict and field preemption are at issue. *See generally Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) ("The question of pre-emption is predominantly legal…."). For conflict preemption, the facts appropriate for discovery would include be those going to whether party can actually and simultaneously comply with both federal and state law. *See Mason v. Smithkline Beecham Corp.*, 596 F.3d 387, 390 (7th Cir. 2010) (explaining that conflict preemption "occurs when there is an actual conflict between state

and federal law such that it is impossible for a person to obey both" (citation omitted)). As for field preemption, that branch of preemption concerns the congressional intent behind the enactment of the underlying federal statute, *id.* (explaining that field preemption "occurs when the 'structure and purpose' of federal law shows Congress's intent to preempt state law"), an intent which the Court must discern through the language of the statute, the statutory framework, and legislative history. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485-486 (1996).

Here, Hoosier Hills wants—essentially—to obtain (1) communications between the FERC and REX and (2) REX's internal discussions about any possible preemption to uncover evidence relating to field preemption. It contends that the discovery will uncover evidence about "[w]hether the FERC intended to supersede the NRC in its authority." [Dkt. 83 at 3.] But Congress' intent forms the "touchstone in every pre-emption case," including this one. *Lohr*, 518 U.S. at 485 (quotation omitted). The views of an administrative agency, like the FERC, aren't binding and receive no deference insofar as they reach a conclusion about (non) field preemption. *Wyeth v. Levine*, 129 S. Ct. 1187, 1201 (2009) (finding no preemption even in the face of a preamble to regulations indicating that the agency specifically intended them to preempt state law). An agency's views about whether Congress intended federal law to completely occupy a particular field are only relevant insofar as they bear upon how state regulation would or would not interfere with the agency's functioning; and even then, the weight afforded to them depends upon the Court's assessment of their "thoroughness, consistency, and persuasiveness." *Id. See also La. Public Serv. Com v. FCC*, 476 U.S. 355, 374 (1986) ("[A]n agency literally has no power to act, let alone pre-empt the validly enacted legislation of a sovereign State, unless and until Congress confers power upon it"). Given the limited weight applicable to even the FERC's own views, the views of its staff (potentially embodied in

communications with REX) are at best marginally relevant—and even less so those of REX's employees' views on the subject.[1]

Insofar as Hoosier Hills seeks to argue, in response to the pending motion for summary judgment, that REX's initial participation in the state permitting process somehow constituted a waiver of REX's preemption claim here, REX doesn't contest the fact of that participation, [*see, e.g.*, dkt. 1 ¶12]. Thus, Hoosier Hills has all the information that it needs to argue to the Chief Judge about whether any consequences should flow from that participation. *But see Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 883 (9th Cir. 2006) ("Preemption is a power of the federal government, not an individual right of a third party that the party can 'waive.'"); *Morton v. Smith*, 91 F.3d 867, 871 (7th Cir. 1996) (refusing to give effect to a contractual selection of displaced state law over federal law in the ERISA context).

In short, the because Hoosier Hills discovery seeking communications within REX and between REX and FERC is only marginally relevant, if at all, the proposed discovery is outweighed by the costs of responding. Accordingly, the Court won't require REX to answer it. Fed. R. Civ. Pro. 26(b)(2)(C)(iii).

The only discovery requests that implicated proper subjects for discovery in this matter are Interrogatories 12 and 13, which unambiguously asked REX to state the authority that it

---

[1] If ascertaining the FERC's views about the state permitting process were dispositive, or even important, the most efficient way to uncover that intent would be a Rule 30(b)(6) deposition of the FERC on that issue. Hoosier Hills doesn't, however, suggest that it could actually conduct such a deposition (without a prompt and successful motion to quash by the FERC). The roundabout way of obtaining evidence about those views, from FERC staff and REX's agents, also militates against the discovery Hoosier Hills proposes. *Cf.* Fed. R. Civ. Pro. 26(b)(2)(C)(i)(requiring the Court to limit discovery from one source when a "more convenient, less burdensome, or less expensive" source exists).

contends apply to the preemption issue. [Dkt. 73-2 at 5.][2] The Federal Rules do permit parties to propound contention interrogatories. Fed. R. Civ. Pro. 33(a)(2). Since Hoosier Hills propounded them, however, REX has filed its motion for summary judgment. [Dkt. 74.] Hoosier Hills can, and should, look to REX's briefing, as it is a "more convenient, less burdensome, [and] less expensive" source for obtaining that requested information, Fed. R. Civ. Pro. 26(b)(2)(C)(i).

But "[m]otion practice is not an exercise in trial and error or maybe-maybe not where a party can reserve arguments to present later if earlier ones fail." *Brownstone Publ'g, LLC v. AT&T, Inc.*, 2009 U.S. Dist. LEXIS 25485, *7 (S.D. Ind. 2009) (quotation omitted). Consistent with that principle, REX must essentially fish or cut bait on its preemption arguments. It can either answer Interrogatories 12 and 13 within **seven days,** or file a report with the Court that it will stand by its prior briefs. Should REX choose the latter it will be limited to arguments previously raised unless either new authority develops or unless Defendants "open the door" to additional authority when drafting their opposition to the motion for summary judgment.

Another reason exists, however, to deny Hoosier Hills Motion: Hoosier Hills failed to comply with Local Rule 37.1, which requires counsel to certify having held a meet-and-confer before filing a motion to compel. Hoosier Hills only proposes to hold one in its Reply brief, one which could have potentially resolved several vagueness objections that REX also asserted. [*See* dkt. 83 at 6 (offering, in its reply brief, that to hold a "good-faith conference" to resolve the vagueness objections).]

---

[2] The Court is satisfied that Hoosier Hills drafted the Interrogatories as reasonably precise as possible and does not, therefore, find them vague, as REX alternatively argues that they are.

- 7 -

## CONCLUSION

The Motion to Compel Discovery [dkt. 72] is **DENIED**. Consistent with the Court's previous scheduling order, [dkt. 82], Defendants shall file their response to REX's pending summary judgment motion within thirty days.

05/07/2010

                                                Jane Magnus-Stinson
                                                United States Magistrate Judge
                                                Southern District of Indiana

**Distribution via ECF only:**

Sierra L. Alberts
INDIANA OFFICE OF THE ATTORNEY GENERAL
sierra.alberts@atg.in.gov

Steven D. Griffin
INDIANA OFFICE OF THE ATTORNEY GENERAL
steve.griffin@atg.in.gov

Joseph M. Hendel
HACKMAN HULETT & CRACRAFT LLP
jhendel@hhclaw.com

Peter Campbell King
CLINE KING & KING PC
pck@lawdogs.org

Philip B. McKiernan
HACKMAN HULETT & CRACRAFT, LLP
pmckiernan@hhclaw.com

Anthony Seaton Ridolfo Jr.
HACKMAN HULETT & CRACRAFT LLP
aridolfo@hhclaw.com

Tamara B. Wilson

CLINE KING & KING P.C.
tbw@lawdogs.org