UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ROCKIES EXPRESS PIPELINE LLC, )
    Plaintiff, )
     )
    vs. )    1:08-cv-1651-RLY-DML
     )
INDIANA STATE NATURAL )
RESOURCES COMMISSION, )
    Defendant, )
     )
and )
     )
ELROD WATER COMPANY, d/b/a )
HOOSIER HILLS REGIONAL WATER )
DISTRICT, )
    Defendant-Intervenor )
     )
     )

**ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**Background**

Plaintiff, Rockies Express Pipeline, LLC ("REX"), is in the business of transporting natural gas via pipelines that run through numerous states, including Indiana. In order to construct a natural gas pipeline, REX, or any other company, must obtain approval from the Federal Energy Regulatory Commission ("FERC"), which demonstrates its approval through the issuance of a Certificate of Public Convenience and Necessity ("FERC Certificate"). There are numerous FERC regulations and guidelines

that a party must follow in order to obtain this certificate, and the FERC encourages a certificate applicant to cooperate with various interested state and local agencies.

REX planned to build a lengthy natural gas delivery pipeline across a large part of the country and, as a part of that larger plan, sought to build a pipeline connecting facilities in Missouri to facilities in Ohio. The project was dubbed REX EAST and in preparation for the construction of REX EAST, REX submitted to the Indiana Department of Natural Resources ("DNR") an application for a permit authorizing it to locate a portion of that interstate pipeline within the floodway of the Whitewater River in Franklin County, Indiana. On January 23, 2008, DNR approved the permit application, issuing a Certificate of Approval ("DNR Certificate"), which was later augmented by an amendatory letter dated April 21, 2008. Defendant-Intervenor Elrod Water Company, d/b/a Hoosier Hills Regional Waste District ("Hoosier Hills"), filed a petition with Defendant Indiana State Natural Resources Commission ("NRC"), seeking an administrative review and reversal of the issuance of the DNR Certificate. In Indiana, the NRC is charged with the responsibility of reviewing any challenges made to a DNR permitting decision. The Hoosier Hills petition was combined with other petitions which sought to have the issuance of the DNR Certificate overturned, and together they were docketed as Administrative Cause No. 08-27W ("Administrative Action"). The petitioners' complaints regarding the issuance of the DNR Certificate centered around the dangers created by the type of construction that was allowed by the permit and the impact

of the construction on the Whitewater River and its aquifer, both while the work occurred and afterward.

On May 30, 2008, the FERC issued its order, granting REX a FERC Certificate approving the construction and operation of REX EAST subject to certain conditions (including special environmental mitigation efforts and a construction completion deadline of 18 months), which REX readily accepted on June 2, 2008. Hoosier Hills was a party to the FERC proceeding, opposing the issuance of the FERC Certificate and seeking to reroute the pipeline. Hoosier Hills claimed that the pipeline, as routed, would interfere with its wellhead protection zone located in the vicinity of the Whitewater River in Franklin County, Indiana. As one of the conditions placed upon the issuance of its certificate, the FERC required special mitigation measures be employed in the Whitewater River area and that REX consult with Hoosier Hills regarding a water monitoring plan. The FERC Certificate also includes the following language:

> Any state or local permits issued with respect to the jurisdictional facilities authorized herein must be consistent with the conditions of this certificate. We encourage cooperation between interstate pipelines and local authorities. However, this does not mean that state and local agencies, through application of state or local laws, may prohibit or unreasonably delay the construction or operation of facilities approved by this Commission.

With the FERC Certificate in hand, REX moved to dismiss the Administrative Action on the grounds that it was preempted by the FERC Certificate and the exclusive jurisdiction of that federal commission over the sale and transportation of natural gas.

3

The presiding administrative law judge in the Administrative Action denied REX's motion to dismiss on September 24, 2008, opining that REX had an obligation to submit to the NRC's review of a DNR certificate which was concomitant with its obligation to apply for such certification in order to proceed with its pipeline construction in an Indiana floodway. Accordingly, discovery proceeded in the Administrative Action at the same time REX was gearing up to meet the FERC deadline for constructing the pipeline.

In addition to pursuing its petition with the NRC, Hoosier Hills formally requested that the FERC reconsider its decision to allow REX to route the pipeline through the Whitewater River floodway. However, after considering the arguments raised by Hoosier Hills on November 10, 2008, the FERC re-affirmed its original findings and the special requirements it had imposed in conjunction with its approval, merely increasing the amount of time some of those mitigation requirements were to remain in place.

This lawsuit was filed by REX on December 10, 2008. It seeks a declaratory judgment that the FERC Certificate preempts the NRC from asserting continued authority and jurisdiction to review the DNR's issuance of its Certificate. In February 2009, shortly after this lawsuit was filed, the FERC released REX to commence its pipeline construction in the Whitewater River area, with requirements for increased mitigation efforts. In July 2009, this court granted REX's motion for a preliminary injunction and entered its order enjoining Defendant NRC from exercising continued authority and jurisdiction over the Administrative Action. Two months later, Defendants' Motion to

Dismiss this lawsuit was denied. The pipeline has since been completed and is operational. This court now addresses REX's summary judgment motion seeking the aforementioned declaratory judgment.

## Discussion

Preemption addresses the displacement of state or local law by federal law on the same subject. The preemption doctrine derives from the Supremacy Clause of the Constitution, which provides that properly enacted federal laws take precedence over state and local laws on the same subject. See U.S. Const., Art. VI. It is employed in three different situations, the first of which is referred to as express preemption. Express preemption occurs when Congress expressly states an intent to preempt state or local law. *See Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299 (1988). The second type of preemption is known as implied preemption. It exists where the intent to preempt is inferred either because the scheme of federal regulation is so comprehensive that there is no room for supplementary state or local regulation or because the field is one in which the federal interest is so dominant that it precludes state regulation on the same subject. *See Schneidewind*, 485 U.S. at 300. Courts refer to the third type of preemption as conflict preemption. It exists when federal regulation does not completely preclude state regulation in a particular field, but the state regulation actually conflicts with federal law. *Id*. Conflict preemption occurs either when it is impossible to comply with both the federal and state regulatory schemes or when the state or local regulation presents an

5

obstacle to fully achieving the federal objective. *Id*. In this case, REX contends that either the second or third type of preemption is applicable.

By enacting the Natural Gas Act ("NGA"), 15 U.S.C. § 717 *et seq.,* Congress conferred upon the FERC exclusive jurisdiction over the transportation and sale of bulk natural gas in interstate commerce. *Schneidewind*, 485 U.S. at 300-301. The comprehensive regulatory scheme of the NGA includes the requirement that a natural gas company obtain a FERC Certificate in order to construct a pipeline. 15 U.S.C. § 717f(c)(1)(A). To obtain such a certificate, an applicant must survive public hearings on the application and otherwise make its way through a forest of requirements designed to show, among other things, that it has addressed acquisition and environmental concerns. *See* 18 C.F.R. § 157. "Such certificates are granted only when the FERC finds that a company is willing and able to comply with the requirements, rules, and regulations of the federal regulatory scheme." *Northern Natural Gas Co. v. Iowa Utilities Bd.*, 377 F.3d 817, 819 (8th Cir. 2004).

According to REX, allowing the Administrative Action to continue is, in essence, allowing the NRC to regulate in a "field" that the NGA has reserved for the FERC alone. At a minimum, REX urges, the request by petitioners that the NRC reverse or overturn the issuance of the DNR Certificate promotes a collision between any decision by the NRC in favor of petitioners and the FERC's determination concerning the project's appropriateness. In either case, preemption would apply. *Schneidewind*, 485 U.S. at 300.

Alternatively, REX argues that the Administrative Action is an impermissible collateral attack on the FERC Certificate.

The NRC responds by pointing out that state laws that have only an indirect effect on interstate gas facilities are not preempted. *Id.* at 308. It goes on to maintain that, because the construction of the pipeline has already been completed, continuing its administrative review of the appropriateness of the issuance of the DNR Certificate is in no way obstructing the FERC Certificate or congressional objectives. It argues that the process of obtaining the permit for construction in an Indiana waterway, which the FERC Certificate requires REX to obtain, is not complete simply upon issuance of the DNR Certificate; rather, it must survive any administrative review before it can be said to be a final order.

Hoosier Hills also opposes summary judgment, reiterating some of the NRC arguments and asserting additional reasons for denial of the motion. It contends that the NGA specifically allows a state to maintain the right to police the construction of a pipeline within a floodway because the NGA contains a savings clause providing that it does not affect a state's rights under the Federal Water Pollution Control Act ("FWPCA"). Further, it contends that the process of review should be allowed to proceed and only if the result conflicts with congressional intent should preemption be invoked. Finally, Hoosier Hills argues that this court should abstain from exercising any authority over a state review process under the *Burford* abstention doctrine, especially in light of

7

President Obama's May 2009, Executive Order, discouraging the invocation of preemption by agencies.

First, this case does not present the type of special circumstance required for this court to refuse its strict duty to exercise the jurisdiction given to it by Congress. *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716 (1996). In *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), the Supreme Court drew upon principals of federalism to assuage its concern over the complexity of the issues involved and the importance of the oil industry to the State of Texas, by abstaining from hearing a request to enjoin enforcement of an order issued by a Texas agency. Unlike the circumstances here, in *Burford* the Supreme Court specifically noted that "[t]he federal government, for the present at least, has chosen to leave the principal regulatory responsibility with the states ...." *Id*. at 319. There is no question here that Congress has conferred exclusive jurisdiction on the FERC to regulate the sale and interstate transportation of natural gas and the executive branch has no authority to alter congressional intent. The fact that the FERC encourages a permit applicant to cooperate with state and local agencies and to file copies of its state permits as part of the process to obtain a FERC Certificate, does not negate its ultimate authority to determine the route of any gas pipeline regardless of state objections, as the agency itself is quick to point out in the cooperation provisions of its certificate.

Hoosier Hills' citation to *Natural Resources Defense Council, Inc. v. BP Products North America, Inc.*, 2009 WL 1854527 (N.D.Ind. 2009) is unpersuasive as well. In that

case, the district court chose to abstain from interfering with the decision of the Indiana Department of Environmental Management to grant a permit to BP on the basis of the lesser of two potentially applicable standards, because to do so would create the potential of conflict with the state's effort to effect its policy. *Id.* at *10. Here, the court is not being asked to second-guess the expertise of an Indiana agency. The DNR Certificate has already been issued. The court is, instead, being asked to keep Hoosier Hills and the NRC from second-guessing the DNR and FERC, which agencies both found the construction and route of the pipeline, as submitted, appropriate.

The FWPCA provides Defendants with no help either. While it is true that the NGA has a savings clause with regard to delegations of state authority under the FWPCA, that act enumerates very specific types of state authority, none of which are implicated by the Administrative Action. The FWPCA grants the states authority to set their own state-specific effluent limitations, certify and enforce compliance and issue discharge permits. 33 U.S.C. §§ 1313, 1319, 1341-42. The Administrative Action at issue in the case at bar is a review of the DNR's approval of REX's locating its pipeline in an area of the Whitewater River floodway and the construction methodology used to complete that project. The review was not initiated by the state, but rather by Hoosier Hills and others. They have clearly requested that the DNR approval be overturned because the location of the pipeline and the methods employed to install it threaten this source of water for public consumption.

9

The court finds unconvincing the Defendants' arguments that the Administrative Action should be allowed to proceed because such a proceeding would not interfere with a pipeline which is already operational and that only after a determination by the NRC in the Administrative Action can there be an analysis of its potential conflict with congressional intent. Such arguments ignore the petitioners' stated goal and request for relief in the Administrative Action. The NRC is being asked to overturn the DNC and revoke its certificate of approval, which in all material respects would be a revocation of the state's approval of REX's construction of the pipeline within the Whitewater River floodway.

REX is not arguing, and this court is not suggesting, that all state and local regulations that have even a tangential effect on a gas pipeline construction project are preempted. However, revocation of a construction permit is not the type of "indirect effect" the Supreme Court has said could hypothetically coexist between the FERC's regulation of the rates and facilities of natural gas companies and state law. *See Schneidewind,* 485 U.S. at 308-09. A different type of proceeding aimed at the enforcement of state requirements that do not conflict with the FERC's approval of the construction and location of REX EAST may not be preempted. But at this point, the court sees nothing that the NRC can do in the currently enjoined Administrative Action which is not mooted by the completion of construction or a direct attempt to regulate in a field in which the FERC has been given exclusive jurisdiction.

The turning point in this dispute, from a chronological examination, was when the FERC Certificate was issued over the objections of Hoosier Hills. Hoosier Hills was unsuccessful in the attempts it made with the DNR to prevent the issuance of the state permit. In addition to seeking administrative review with the NRC, Hoosier Hills unsuccessfully attempted to persuade the FERC to require a change in the route of the pipeline. It is not as though the FERC did not afford Hoosier Hills the opportunity to raise any of the objections which it had raised in the Administrative Action, nor did it ignore the objections raised by Hooiser Hills. To the contrary, in the order issuing the FERC Certificate, paragraphs 102 through 123, on pages 30 through 34, address in detail the objections raised by Hoosier Hills regarding protection of its wellhead and set forth the Commission's reasoning for approving REX's construction plans over those objections. The FERC may have required REX to pursue state construction permits and file them as part of its application process, but that requirement did not negate the FERC's ultimate authority over the construction of the pipeline. Unlike the NGA provisions regarding liquified natural gas terminals (*see* 15 U.S.C. 717b-1), nothing in the Act suggests that FERC approval of pipeline construction and location is contingent upon consultation with the states.

Apparently, neither Hoosier Hills nor the NRC chose to challenge the FERC Certificate through the appeals process outlined in the NGA. 15 U.S.C. § 717r(b). REX cites *Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255 (10th Cir. 1989)

and *Islander East Pipeline Co., L.L.C. v. Blumenthal*, 478 F.Supp.2d 289 (D.Conn. 2007) in support of its argument that continued pursuit of the Administrative Action is an impermissible collateral attack on the FERC Certificate in light of the availability of federal judicial review through the NGA.  The NRC fails to respond to REX's argument, but Hoosier Hills retorts that it requested the administrative review by NRC well before the FERC Certificate was issued, and therefore the proceeding could not be considered a collateral attack.

In light of the FERC's ultimate authority with regard to locating an interstate natural gas pipeline, why Hoosier Hills did not seek federal judicial review of the FERC Certificate pursuant to 15 U.S.C. § 717r, is puzzling.  Nevertheless, quibbling over the correct legal terminology to use in these chronologically unique circumstances seems a waste of time.  The cases cited by REX serve as additional support for this court's determination that the Administrative Action is preempted, regardless of whether there are chronological reasons not to deem the Administrative Action a collateral attack on the FERC Certificate.  No matter what label you affix or term of art you use, in the end, it is the FERC, with review by the federal courts, and not the DNR or NRC that has the final word here.

## Conclusion

For the reasons discussed in this Entry, the court GRANTS Plaintiff's Motion for Summary Judgment (Docket # 74). Plaintiff REX is entitled to a declaratory judgment to the effect that federal law preempts the Defendant NRC from continuing to exercise authority and jurisdiction over its Administrative Cause No. 08-027W which seeks to overturn the Amended Certificate of Approval (Permit No. FW-24514) issued by the Indiana Department of Natural Resources. Further, Defendant NRC, its members, employees and those in active concert or participation with them are permanently enjoined and shall refrain and desist from taking any actions in furtherance of Administrative Cause No. 08-027W.

**SO ORDERED** this  28th   day of September 2010.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Sierra L. Alberts
INDIANA OFFICE OF THE ATTORNEY GENERAL
sierra.alberts@atg.in.gov

Steven D. Griffin
INDIANA OFFICE OF THE ATTORNEY GENERAL
steve.griffin@atg.in.gov

Joseph M. Hendel
HACKMAN HULETT & CRACRAFT LLP
jhendel@hhclaw.com

Peter Campbell King
CLINE KING & KING PC
pck@lawdogs.org

Philip B. McKiernan
HACKMAN HULETT & CRACRAFT, LLP
pmckiernan@hhclaw.com

Anthony Seaton Ridolfo Jr.
HACKMAN HULETT & CRACRAFT LLP
aridolfo@hhclaw.com